1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 10 NORTHWEST ADMINISTRATORS, INC., | Case No. 10-cv-1069-JPD |
| 11 Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY |
| 12 v. | JUDGMENT |
| 13 ACE PAVING CO., INC., a Washington | |
| 14 corporation, | |
| 15 Defendant. | |
| 16 | |

17      I.      INTRODUCTION AND SUMMARY CONCLUSION

18      Plaintiff Northwest Administrators, Inc. ("Northwest") moves the Court for summary

19 judgment against defendant Ace Paving Co., Inc. ("Ace"). Dkt. 14. Ace opposes the motion.

20 Dkt. 19. After careful consideration of Northwest's motion, Ace's opposition, and the balance

21 of the record, the Court GRANTS Northwest's motion for summary judgment.

22      II.      BACKGROUND

23      The relevant facts of this case, as set forth by Northwest's briefs and supporting

24 documents, are uncontroverted by Ace. Northwest is the authorized administrative agent and

25 assignee of the Washington Teamsters Welfare Trust ("WTWT") and the Western Conference

26 Teamsters Pension Trust ("WCTPT," and collectively, "the Trusts"). The Trusts are employee

ORDER
PAGE - 1

benefit plans established by the Washington Teamsters Welfare Trust Agreement and Declaration of Trust (the "WTWT Trust Agreement") and the Western Conference of Teamsters Pension Trust Agreement and Declaration of Trust (the "WCTPT Trust Agreement"). Dkt. 16, Exs. A and B. The Trusts are both governed by § 302(c)(5) of the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 186(c)(5); 29 U.S.C. § 1001 *et seq.,* as amended (1988). The Trusts provides medical, dental, vision, time loss, death, and pension benefits to eligible employees. Dkt. 16 at 2-3 (Ditter Decl.). *See also id.*, Ex. A. at 5 (purpose of the WTWT); *id.*, Ex. B at 4-5 (purpose of the WCTPT).

Employers bound by a 2007-2012 collective bargaining agreement ("CBA") with a local Teamsters union, the International Brotherhood of Teamsters Local 589 ("Local 589"), are required to remit monthly contributions to the Trusts at specified rates "for each compensable man hour of Teamsters employed by such Employers in work contained under the terms of this Agreement." *See id.*, Ex. E at § 7.2.1. The CBA also requires employers to make their required contributions to the Trust "on or before the tenth (10th) day of the month following the month in which the hours were worked. . . ." *Id.* Ace is such an employer.

Ace became bound to the terms of the CBA as well as the WTWT Trust Agreement when it entered into a Heavy Construction Compliance Agreement (the "Compliance Agreement") with Local 589 on July 28, 2003.[1] *See id.* at 4 (Ditter Decl.); *id.*, Ex. C (the Compliance Agreement). In addition, by signing an Employer-Union Certification Agreement

---

[1] The Compliance Agreement provides that Ace is bound by any "successive collective bargaining agreements" to a 2003-2007 CBA, which in this case is the Teamsters 2007-2012 Building, Heavy and Highway Construction Labor Agreement. *Id.*, Ex. C. Although the Compliance Agreement states that Ace is bound by the Teamsters Construction Industry Welfare Trust ("TCIWT") Agreement, it also provides that Ace is a party to agreements entered into by TCIWT's "successors in trust." *Id.* Following a merger effective January 1, 2010, the WTWT became the TCIWT's successor trust and the WTWT Trust Agreement became the TCIWT Agreement's successor trust agreement. *See id.* at 4 (Ditter Decl.).

ORDER
PAGE - 2

(the "E-U Agreement") on January 19, 2001, Ace agreed to be bound by the WCTPT Trust Agreement. *See id.* at 4-5 (Ditter Decl.); *id.*, Ex. D (the E-U Agreement). Ace acknowledges that it is a party to the above-described agreements, and is obligated to remit contributions to the Trusts by the tenth day of each month following work by its eligible Teamster employees. *See id.* at 8 (Ditter. Decl.); Dkt. 19 at 1-2.

Pursuant to the WTWT Trust Agreement, a participating employer who makes delinquent contributions is required to pay "liquidated damages of 20% of the amount of Employer contributions due on such date following the date on which Employer contributions became delinquent[.]" Dkt. 16, Ex. A at 8. In addition, the WTWT Trust Agreement provides that employers must pay interest for the delinquent contributions, and "reimburse the Trust Fund for all of its costs, including . . . all reasonable attorneys' fees incurred by the Trust Fund in connection" with the collection of the employer's delinquent payments. *Id.* Similarly, the WCTPT Trust agreement requires employers to pay 20% of the amount of delinquent contributions as liquidated damages, interest on any late contributions, and attorneys' fees and costs related to the collection of the delinquent contributions. *See id.*, Ex. B at 6. Thus, the CBA, Compliance Agreement, E-U Agreement, and Trust Agreements collectively require Ace to promptly and fully report and pay monthly contributions to the Trust Funds, or else be held liable for liquidated damages in the amount of 20% of the delinquent contributions, plus interest, attorneys' fees, and costs.

Ace acknowledges that its contributions to the WTWT and WCTPT for work performed in April through June 2010 were not timely paid under the Trust Agreements. *See* Dkt. 19 at 2. The delinquent contributions to Northwest for these employment periods totaled $63,788.62. *See* Dkt. 15, Exs. A and B (Azus Decl.); Dkt. 25, Ex. G. On June 29, 2010, Northwest initiated this action against Ace to recover the total amount of delinquent contributions, as well as liquidated damages, interest, attorneys' fees, and costs. *See* Dkt. 1 at 3-4; Dkt. 16 at 10 (Ditter Decl.). Ace paid Northwest the full amount of delinquent

ORDER
PAGE - 3

contributions in three installments in July 2010.  *See* Dkt. 15 at 1-2 (Azus Decl.); Dkt. 16 at 10 (Ditter Decl.); Dkt. 19 at 2; Dkt. 25, Ex. G.

On February 10, 2011, Northwest filed a motion for summary judgment seeking $12,757.72 in liquidated damages, as well as $204.46 in interest, and reasonable attorneys' fees and costs.  *See* Dkt. 16 at 10 (Ditter Decl.).  Ace does not challenge Northwest's calculations of damages.[2]  Dkt. 19.  Ace contends, however, that the liquidated damages provisions of the Trust Agreements constitute unenforceable penalties under state and federal common law, and that liquidated damages may not be awarded under ERISA if there are no unpaid contributions at the time judgment is entered.  *See* Dkt. 19 at 2-4.  For the reasons discussed below, the Court finds Ace's arguments unpersuasive.

III.    JURISDICTION

The parties have consented to this matter proceeding before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  *See* Dkt. 11 at 3.  The Court has exclusive jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f).  Venue is proper because the Trust Funds are administered in this district.  29 U.S.C. § 1132(e)(2).

IV.    DISCUSSION

A.    *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty*

---

[2]  Ace asserts that "the only disputed issue in this case between Ace and Plaintiff is the enforceability of liquidated damages assessed by the Plaintiff under ERISA and Washington State law[.]"  Dkt. 19 at 2.  Thus, "Ace does not dispute that an award of attorney's fees is permitted under the statute in this case, regardless of whether there is a judgment on the merits of the claim for unpaid contributions[.]"  *Id.* at 9.  However, Ace requests an award of attorneys' fees under 29 U.S.C. § 1132(g)(1) if the Court finds that "29 U.S.C. § 1132(g)(2) does not apply to this action[.]"  *Id.* at 16.  As discussed below, the Court finds that § 1132(g)(2), rather than § 1132(g)(1), governs this case, and therefore Ace is not entitled to attorneys' fees.

ORDER
PAGE - 4

*Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party." *Id.*  In response to a summary judgment motion that is properly supported, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial, and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986).  A mere scintilla of evidence, however, is insufficient to create a factual dispute.  *See Anderson,* 477 U.S. at 252.  To defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630-32 (9th Cir. 1987).

> B.      *ERISA Governs the Liquidated Damages Clauses of the Trust Agreements*

Ace contends that the liquidated damages provision of the Trust Agreements operate as a penalty, and are therefore unenforceable under state and federal common law.  *See* Dkt. 19 at 12-15.  To support this argument, Ace cites the Washington Supreme Court's decision in *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 558-59, 730 P.2d 1340 (1987), and argues that "when [Washington] courts consider the enforceability of a liquidated damages provision the key factor under Washington law is the relation of the liquidated damages clause to potential damages from a breach." *Id*. at 13.  Ace also cites the Ninth Circuit's decision in *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989), as support for the proposition that a liquidated damages provision is void as a penalty under federal common law unless the harm caused by a breach is very difficult or impossible to estimate, and the amount fixed is a reasonable forecast of just compensation for the harm caused.  *Id*. at 14-15.  Ace argues that in this case, Northwest has failed to provide "evidence that it has suffered any actual damages that could justify the additional liquidated damages provision.  While evidence of actual damages is not necessary to

ORDER
PAGE - 5

collect liquidated damages, such evidence can be used to show that a liquidated damages

provision was a justifiable estimate of future damages at the time of the agreement." *Id*. at 14.

Ace's reliance upon state and federal common law in this case is unavailing, however,

because ERISA governs cases such as this one, where an employer owed contributions to an

employee benefit plan at the time the lawsuit was initiated. *See* 29 U.S.C. § 1144(a) (providing

that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate

to any employee benefit plan. . . ."); *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (observing

that ERISA's preemption provision is "clearly expansive"); *General Am. Life Ins. Co. v.

Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) ("ERISA's preemption clause is one of the

broadest ever enacted by Congress, and it preempts even generally applicable laws, not just

laws aimed exclusively at employee benefit plans. . . .") (internal citations omitted). ERISA

provides specific remedies for delinquent contributions, including an award of "(A) the unpaid

contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan

in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

Federal or State law) of the amount determined by the court under subparagraph (A), [and] (D)

reasonable attorney's fees and costs of the action, to be paid by the defendant. . . ." 29 U.S.C.

§ 1132(g)(2).

Furthermore, ERISA obligates participating employers to make contributions to a

multi-employer trust fund in accordance with the terms of a trust agreement or collective

bargaining agreement. *See* 29 U.S.C. §§ 1102(a), 1103(a), 1145. The language of a written

trust agreement defines the rights and obligations of the parties to the trust to the extent they

are consistent with ERISA. *Id.* at § 1145; *Santa Monica Culinary Welfare Fund v. Miramar

Hotel Corp.*, 920 F.2d 1491, 1493-94 (9th Cir. 1990) (internal citations omitted). As noted

above, the WTWT Trust Agreement and WCTPT Trust Agreement both provide that an

employer shall pay liquidated damages of 20% of the amount of the delinquent contributions.

ORDER
PAGE - 6

*See* Dkt. 16, Ex. A at 8; *id*., Ex. B at 6.  Ace has made no showing in these proceedings that these provisions are somehow inconsistent with ERISA, which also provides for liquidated damages in the amount of 20% of any delinquent contributions.

Finally, the Ninth Circuit has held that § 1132(g)(2) is "mandatory and not discretionary."  *Northwest Adm'rs Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying*, *Co*., 746 F.2d 557, 569 (9th Cir. 1984)).  Section 1132(g)(2) requires only that: "(1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Id*.  *See also Idaho Plumbers & Pipefitters Health & Welfare Fund*, 875 F.2d at 215 (holding that ERISA's damages provision was inapplicable because the defendant had paid all contributions owed to the trust before the lawsuit was initiated).

Here, the Court finds that all three criteria for a mandatory award under § 1132(g)(2) are satisfied.  Ace admits that there were unpaid contributions at the time Northwest filed this lawsuit, and that the Trust Agreements provide for an award of liquidated damages.  *See* Dkt. 19 at 2.  As discussed in greater detail below, with respect to the final factor, the Ninth Circuit has held that "mandatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves.'"  *Albertson's*, 104 F.3d at 258 (quoting *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.,* 767 F.2d 1170, 1175 (5th Cir. 1985)).

Accordingly, the state and federal common law cases cited by Ace are inapposite, as such law is preempted by ERISA.  Ace is obligated to pay liquidated damages as a result of its failure to timely pay contributions to the Trusts, regardless of its financial difficulties.

ORDER
PAGE - 7

C.   *Liquidated Damages Are Available Pursuant to § 1132(g)(2) If Unpaid Contributions Existed at the Time the Lawsuit was Filed*

Ace argues that ERISA is inapplicable to this case because a judgment for unpaid contributions is a necessary predicate for an award of liquidated damages under § 1132(g)(2). Dkt. 19 at 3.  Specifically, Ace asserts that where "there are no remaining 'unpaid contributions' to enter a judgment on . . . no judgment may be awarded in favor of the plan for unpaid contributions[.]"  *Id*. at 7.  Ace relies upon statutory language providing for an award of liquidated damages "in an action to recover delinquent contributions . . . in which a judgment in favor of the plan is awarded[.]"  29 U.S.C. § 1132(g)(2).  Ace also points to statutory language providing that a liquidated damages award may not exceed "20 percent . . . of the amount [of unpaid contributions] determined by the court under subparagraph (A)[.]"  *Id*. § 1132(g)(2)(C)(ii).

As Northwest points out, Ace's arguments are unavailing because the Ninth Circuit has held that an employer is liable for mandatory fees under § 1132(g)(2), including liquidated damages, "notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves."  *Albertson's*, 104 F.3d at 258.  Significantly, the Ninth Circuit has also expressly rejected defendant's argument that "a mandatory award under § 1132(g)(2) is improper because the employer voluntarily paid the delinquent contributions . . . thus the district court did not enter judgment against [the employer] relating to those contributions[.]"  *Id*.  Instead, the court held that mandatory "[f]ees may be awarded even though there is no judgment on the merits or when the dispute has become moot because relief is otherwise obtained."  *Id*. (citing *Lads Trucking Co. v. Board of Trustees of W. Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1375 (9th Cir. 1985)).

Indeed, Ace appears to concede that an interpretation of § 1132(g)(2) which authorizes an award of liquidated damages as long as unpaid contributions existed at the time the lawsuit was filed "is arguably the prevailing Ninth Circuit interpretation[.]"  Dkt. 19 at 10.

ORDER
PAGE - 8

1  Nevertheless, Ace posits that Ninth Circuit precedent incorrectly interprets the plain language
2  of § 1132(g)(2).  *Id*. at 9-10.

3  The Court declines Ace's invitation to interpret § 1132(g)(2) in a manner that is
4  contrary to longstanding Ninth Circuit precedent.  In doing so, the Court notes that with the
5  exception of the Sixth Circuit, every Court of Appeals to consider the issue concurs with the
6  Ninth Circuit's interpretation of § 1132(g)(2).  *See UAW Local 259 Soc. Sec. Dep't v. Metro*
7  *Auto Ctr.*, 501 F.3d 283, 288-89 (3d Cir. 2007) (providing that § 1132(g)(2) remedies apply to
8  all contributions unpaid at the time a suit is filed, even if the debts are partially satisfied before
9  judgment); *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258
10 F.3d 645, 654 (7th Cir. 2001) ("The interest and liquidated-damages provisions of ERISA
11 apply . . . only to contributions that are unpaid at the date of suit (not the date of judgment, as
12 argued by the defendant)."); *Iron Workers Dist. Council v. Hudson Steel Fabricators &*
13 *Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995) ("[T]he provisions of § 1132(g)(2)(B) and
14 (C) make reference to unpaid contributions not to establish a limit on qualifying judgments, but
15 rather because the amount of an award of interest or liquidated damages should logically be
16 predicated upon the amount of the unpaid contributions originally at issue, whether or not
17 outstanding at the time of judgment, since that amount correctly measures the damage caused
18 by the delinquency.").  *See also Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857
19 F.2d 476, 478 (8th Cir. 1988) (agreeing that "unpaid contributions" accounted for in
20 § 1132(g)(2) means "contributions unpaid at the time suit was filed[.]").

21 Thus, Ace's argument that § 1132(g)(2) is inapplicable to this case is unavailing.  *See*
22 Dkt. 19 at 2.  Pursuant to the Trust Agreements and § 1132(g)(2), Northwest is entitled to
23 liquidated damages in the amount of $12,757.72, as well as interest and reasonable attorneys'
24 fees and costs.  *See* Dkt. 15, Ex. G.

25
26

ORDER
PAGE - 9

V.    CONCLUSION

For the reasons discussed above, the Court finds no issues of fact regarding Northwest's entitlement to the total amount of liquidated damages sought in this action for Ace's delinquent contributions to the WTWT and WCTPT for the April through June 2010 employment periods.  Accordingly, the Court hereby ORDERS as follows:

(1)    Northwest's motion for summary judgment, Dkt. 14, is GRANTED.

(2)    Judgment is awarded in favor of Northwest and against Ace in the following amounts: $12,757.72 for liquidated damages; $204.46 for interest; and reasonable attorneys' fees and costs.

(3)    The Clerk is directed to send copies of this Order to counsel for all parties.

DATED this 25th day of March, 2011.

*James P. Donohue*

_____
JAMES P. DONOHUE
United States Magistrate Judge

ORDER
PAGE - 10